# IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
## AT KNOXVILLE
### June 28, 2011Session

## STATE OF TENNESSEE v. JASON CHARLES AUSTIN

**Appeal from the Criminal Court for Washington County**
**No.  31527A   R. Jerry Beck, Judge**

---

**No.  E2010-00796-CCA-R3-CD - Filed June 28, 2012**

---

Appellant, Jason Charles Austin, was indicted by a Washington County grand jury for one count of first-degree murder.  After a jury trial, he was convicted of the lesser-included offense of second-degree murder and subsequently sentenced to twenty-three years.  On appeal, Appellant argues that: (1) the trial court erred by allowing Appellant's case to be severed from the case of his co-defendant; (2) the State violated Appellant's rights under the Tennessee and United States Constitutions; (3) the trial court erred in concluding that Christina Boone was a hostile witness and allowing the State to examine her with regard to her previous statement made to the police; (4) the trial court erred in denying Appellant's motion to dismiss the indictment based upon the loss of key evidence; (5) the State violated the Rule of Exclusion; (6) the trial court erred by refusing Appellant's request to call a surrebuttal witness; (7) the trial court erred in instructing the jury that guilt may be inferred from evidence of flight and from concealment of evidence; (8) the trial court erred by imposing a twenty-three-year sentence; and (9) Appellant was denied a fair trial because of cumulative error.  Following our review of the record, we find no reversible error and affirm the judgment of the trial court.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Criminal Court Affirmed.**

JOHN EVERETT WILLIAMS, J., delivered the opinion of the court, in which D. KELLY THOMAS, JR., J., joined and JERRY L. SMITH, J., Not Participating.

Gene G. Scott, Jonesborough, Tennessee, for the appellant, Jason Charles Austin.

Robert E. Cooper, Jr., Attorney General and Reporter; Renee W. Turner, Assistant Attorney General; and Anthony Clark, District Attorney General, for the appellee, State of Tennessee.

# OPINION

## FACTUAL BACKGROUND

On June 22, 2005, Appellant and his pregnant girlfriend were driving and saw the victim driving his car. Appellant's girlfriend noticed that the victim was wearing a pink shirt and started laughing at him. The victim heard her and cursed at her. At some point, they were stopped next to each other at a red light and, according to Appellant and his girlfriend, the victim pointed a gun at them. Appellant ran the red light, and the victim proceeded to chase Appellant. Appellant ran two red lights and two stop signs in an effort to escape the victim. Appellant drove to his aunt's house where he and his girlfriend jumped out of the car and ran into the house. According to Appellant's aunt, the victim pulled up in front of her house and pointed a gun at her while she was standing on the porch. The victim drove away soon afterwards.

Six days later, on June 28, 2005, Appellant and his girlfriend were returning from a shopping trip to Wal-Mart at 4:00 a.m. When they passed a Days Inn, they saw the victim's car in the parking lot. Appellant drove into the motel parking lot and went by the victim's car to get a better look. Appellant drove to the house of his cousin, Danny Green, who is the co-defendant in this case. When Appellant and his girlfriend arrived, Appellant and the co-defendant went to another room to talk. During the conversation, Appellant and the co-defendant decided to go to the Days Inn and to ask Marc Coffey to go with them.

The defendant and co-defendant met Mr. Coffey in a church parking lot and got into his truck. Mr. Coffey drove to the Days Inn parking lot. When they arrived, Appellant and the co-defendant saw the victim in the parking lot. The victim was going to his car to get his girlfriend's sweater.

Appellant approached the victim and asked the victim if he remembered him. The victim replied that he did not remember him. Appellant informed the victim that he had chased him through town. Appellant stated that he swung his fist at the victim, but he did not hit him. As the victim twisted to dodge the punch, Appellant saw something shiny in the victim's hand. Appellant drew his gun and shot the victim. He stated that he was acting in self-defense.

Mr. Coffey testified that he met Appellant and the co-defendant at a church. He drove them to the Days Inn so they could meet Appellant's drug dealer and buy drugs. Mr. Coffey stated that Appellant walked towards the victim's car and was followed by the co-defendant. Mr. Coffey saw Appellant hit the victim on the side of the head with a gun. The victim attempted to run away. Mr. Coffey heard two gunshots. He saw that the co-defendant had

a gun. According to Appellant, he did not realize that the co-defendant had followed him into the parking lot. Mr. Coffey started to pull out of the parking lot, but Appellant and co-defendant were able to get to his truck. Mr. Coffey drove them to their car at the church.

According to the victim's girlfriend, she and the victim had been staying at the Days Inn in Room 153. They had recently become engaged. They had been using drugs off and on for the previous five to seven days. She had become cold in the motel room, and the victim had gone outside to get her sweater from the car. While he was outside, she heard two gunshots. She ran outside and found the victim lying on the ground. He showed no signs of life. She ran to the hotel room and called 911. According to her, the victim did not have a gun on his person.

Christina Boone, Appellant's cousin and the co-defendant's sister, went to a BP station to meet Appellant and the co-defendant. Appellant's girlfriend went with her. When they arrived, Appellant and the co-defendant were frantic. A gun suddenly appeared in the backseat of her car. She returned to the co-defendant's house. Appellant and the co-defendant also returned to the house. They discovered that the victim had died on the news that morning. Shortly thereafter, she and Appellant went to Gatlinburg with the co-defendant and his wife where they were arrested.

Sergeant Samuel Reed responded to the Days Inn in North Johnson City. When he arrived he found the victim lying on the ground with the victim's girlfriend and the hotel manager next to the victim. Sergeant Reed felt for a pulse and determined that the victim was most likely deceased. He saw two bullet wounds on the victim's body.

Investigator John Sipos responded to the scene. He processed the scene and the victim's motel room. He found a gun in the victim's motel room hidden in a toboggan hat.

Dr. Darinka Mileusnic-Polchan completed an autopsy of the victim. She found that the cause of death was multiple gunshot wounds. One bullet entered the victim's thigh and lodged in his hand. A second bullet entered the victim's back, severed his spinal cord and eventually lodged in the right-side of the victim's brain. The second bullet caused fatal injuries. The victim also had some surface injuries to his face and head. These injuries could have been caused by either a fall or a blunt force trauma.

On September 6, 2005, the Washington County Grand Jury indicted Appellant for one count of first-degree murder. A jury trial was held beginning August 19, 2008. On August 28, 2008, the jury convicted Appellant of the lesser included offense of second-degree murder. The trial court held a separate sentencing hearing on October 10, 2008, and

sentenced him to twenty-three years. After the denial of his motion for new trial on March 25, 2010, Appellant filed a timely notice of appeal on April 8, 2010.

## ANALYSIS

### Severance from Co-defendant

Appellant argues that the trial court erred when it severed the trials for Appellant and his co-defendant. The State argues that the trial court did not err.

Prior to the co-defendant's trial, the trial court held a hearing to determine whether Appellant understood his constitutional rights in light of his desire to be tried jointly with his co-defendant. At the hearing, the trial court was concerned about an issue arising under the United States Supreme Court case of *Bruton v. United States*, 391 U.S. 123 (1968), which prohibited a non-testifying defendant's confession to be used against a co-defendant. This was an issue in Appellant's case because his co-defendant gave a statement to police. The trial court questioned Appellant about waiving his rights under *Bruton* and made the following findings:

> The Court, as a precaution, which the courts are required to do, to protect the constitutional rights of all parties that come before the Court, and follow the law. The Court learned just a few minutes ago that when I was going over Bruton, reminding the defendant of his rights not to have co-defendant tried with him that had given a statement, advised him that the statement would come in, in clear terms. The State was going to introduce it. And he couldn't change his mind once we got the jury sworn, or jury selection sworn.

> He indicated through his counsel that he didn't want to do that. That even at this late date, which is his right. We don't want to create error if we force the case to a joint trial.

> Then, well we retired to chambers. The district attorney was present, Mr. [ ]; and I believe his assistant, Mr. [ ]; and [co-defendant's attorney]. And [Appellant's attorney] said he – prior to recess, said he wanted to go talk to his client. [Appellant's attorney] came in. And this was off the record. And [Appellant's attorney], after talking to his client, he said he wanted to proceed with a joint trial.

-4-

. . . .

The defendant has expressed, through his counsel, he now wants to be tried.

But he's wavering. He's – this is not something that just came up in the last few days. It was months ago that the request was made, with the consent of the parties, to consolidate both trials in a single trial. On this very day he's now wavering.

I do know this: Unless he clearly, knowingly, and voluntarily waives his right under *Bruton*, that the Court will surely have to try both cases again, probably. At least one of them.

And I look at a waiver of a constitutional right like you do when you take the waiver in guilty plea hearings. Lot of people come in and say they want to plead guilty. And you start asking those questions. And that's what I was doing, not from a plea of guilty standpoint, a Rule 11, but from – just to be assured that he understood that he was giving up that constitutional protection under *Bruton* he had.

And he said then he didn't want to. Previously, months ago, he said he did want to waive it. Started out here this morning it was going to be a joint trial. Then he said he didn't want to be. Then he's – now he's gone back and told his lawyer he wants to.

That's too much hesitation, too much equivocating for me to be satisfied, as a judge, that he's knowingly and voluntarily submitting himself to trial with the co-defendant, who gave a statement. And in my function as a judge, I can't leave that.

I don't know if he knows what he wants to do. And certainly to a constitutional degree. So I'm going to . . . .

On his motion not to be tried, I'm going to have to sever [Appellant] from the [co-defendant] Green case, but proceed with the [co-defendant] Green case here today.

We first note that Rule 14(c)(2)(B) of the Tennessee Rules of Criminal Procedure provides that the trial court "shall grant a severance of defendants . . . during trial . . . [if]

-5-

necessary to achieve a fair determination of the guilt or innocence of one or more defendants." Tenn. R. Crim. P. 14(c)(2)(B). Turning to case law, the decision of whether or not to grant a motion for severance is in the trial court's discretion. *State v. Ensley*, 956 S.W.2d 502, 508 (Tenn. Crim. App. 1996). "The exercise of that discretion will not be reversed absent an affirmative showing of prejudice." *Id.* "In other words, the record must demonstrate that 'the defendant was clearly prejudiced to the point that the trial court's discretion ended and the granting of [a] severance became a judicial duty.'" *Parham v. State*, 885 S.W.2d 375, 383 (Tenn. Crim. App. 1994) (quoting *Hunter v. State*, 222 Tenn. 672, 440 S.W.2d 1, 6 (Tenn. 1969)). The trial court, however, must not only protect the rights of the accused; it must also safeguard the rights of the State/prosecution, "'and when several persons are charged jointly with a single crime, . . . the state is entitled to have the fact of guilt determined and punishment assessed in a single trial, unless to do so would unfairly prejudice the rights of the defendants.'" *State v. Wiseman*, 643 S.W.2d 354, 362 (Tenn. Crim. App. 1982) (quoting *Woodruff v. State*, 51 S.W.2d 843, 845 (Tenn. 1932)).

The case at hand is unusual because most issues concerning severance on appeal deal with a defendant who is appealing the trial court's decision not to sever. In this case, Appellant appeals the trial court's decision to sever.

As stated above, the trial court decided to sever the two trials based upon the indecision displayed by Appellant immediately prior to the beginning of his joint trial with his co-defendant. Appellant argues that due process rights and his right to a fair trial were violated because of the severance. He argues that the attorney's intent was to have the two defendants tried together. Both Appellant and his co-defendants were going to testify and through the testimony of the co-defendant and other witnesses Co-defendant Green would be shown to have been the shooter of the fatal shot. Therefore, Appellant argues that he was prejudiced.

However, a review of the record shows that Co-defendant Green testified at Appellant's trial. The evidence did indeed lead to the conclusion that he had fired the fatal shot. Therefore, this evidence was presented to the jury even though the cases were severed. For this reason, Appellant has not been able to prove his argument that he was prejudiced by the severance of his trial from Co-defendant Green's trial. For this reason, we find no abuse of discretion by the trial court in ordering the severance of the trials.

### *Brady* **Violation**

Appellant argues on appeal that the State violated the provision set out in *Brady v. Maryland*, 373 U.S. 83, 87 (1963), which requires the State to disclose exculpatory evidence to the defense. Specifically, Appellant argues that the State violated this rule when it failed

to disclose that it knew that the victim had admitted to his mother before his death that he had brandished a weapon during the initial confrontation between the victim and Appellant and that the State failed to disclose the favorable treatment provided to co-defendant and State's witness, Marcus Coffey.

The Due Process Clause of the Fourteenth Amendment to the United States Constitution provides every defendant the right to a fair trial.[1] To facilitate this right, a defendant has a constitutionally protected privilege to request and obtain from the prosecution evidence that is either material to guilt or relevant to punishment. *Brady*, 373 U.S. at 87. Further, the prosecution has a duty to turn over exculpatory evidence that would raise a reasonable doubt about a defendant's guilt. *United States v. Agurs*, 427 U.S. 97, 110-11 (1976).

In *Brady*, the Supreme Court held that "suppression by the prosecution of evidence favorable to an accused upon request violates due process where the evidence is material either to guilt or to punishment, irrespective of the good faith or bad faith of the prosecution." *Brady*, 373 U.S. at 87. In order to establish a due process violation under *Brady*, four prerequisites must be met:

1. The defendant must have requested the information (unless the evidence is obviously exculpatory, in which case the State is bound to release the information, whether requested or not);

2. The State must have suppressed the information;

3. The information must have been favorable to the accused; and

4. The information must have been material.

*State v. Edgin*, 902 S.W.2d 387, 389 (Tenn. 1995) (citations omitted). *Brady* does not require the prosecution "to disclose information that the accused already possesses or is able to obtain." *State v. Marshall*, 845 S.W.2d 228, 233 (Tenn. Crim. App. 1992). The burden of proving a *Brady* violation rests with the defendant, and the violation must be proven by a preponderance of the evidence. *Edgin*, 902 S.W.2d at 389.

---

[1] "As a general rule, . . . a trial lacks fundamental fairness where there are errors which call into question the reliability of the outcome." *State v. Ferguson*, 2 S.W.3d 912, 914 n.3 (Tenn. 1999) (citing *Betts v. Brady*, 316 U.S. 455 (1942); *Watkins v. State*, 393 S.W.2d 141, 144 (Tenn. 1965); *Lofton v. State*, 898 S.W.2d 246, 248 (Tenn. Crim. App. 1994)).

This Court has stated that in order to establish a *Brady* violation, the information need not be admissible, only favorable to the defendant. *State v. Spurlock*, 874 S.W.2d 602, 609 (Tenn. Crim. App. 1993). Favorable evidence includes evidence that "provides some significant aid to the defendant's case, whether it furnishes corroboration of the defendant's story, calls into question a material, although not indispensable, element of the prosecution's version of the events, or challenges the credibility of a key prosecution witness." *Johnson v. State*, 38 S.W.3d 52, 56-57 (Tenn. 2001) (quoting *Commonwealth v. Ellison*, 379 N.E.2d 560, 571 (Mass. 1978)). This Court will deem evidence material if a reasonable probability exists that the result of the proceeding would have been different had the evidence been disclosed. *United States v. Bagley*, 473 U.S. 667 (1985). A "reasonable probability" is "a probability sufficient to undermine confidence in the outcome." *Id.* at 682 (quoting *Strickland v. Washington*, 466 U.S. 668, 694(1984)).

## Victim's Admission to His Mother

The victim's mother, Diane Ricker, did not testify at trial, but she did testify at the sentencing hearing. During her testimony at the sentencing hearing, she stated that the victim had told her of the altercation he had with Appellant. According to Ms. Ricker, the victim explained that he pulled a gun on Appellant because Appellant had pulled a gun on him first. Ms. Ricker told the trial court that she had informed the State of this information during Appellant's trial. However, according to her, the State told her she would be excluded from the trial if she was a witness, so she did not testify at trial.

Appellant contends that this is exculpatory evidence because this testimony would have corroborated his testimony and his ex-girlfriend's testimony at trial that the victim brandished a gun at them during the altercation which occurred several days before the victim's death. The State contends that the evidence is not material, as is required under *Brady* for relief, because Appellant has been unable to prove that the outcome would have been different had the information been disclosed.

As stated above, Appellant must meet four prerequisites to prove that his due process rights were violated. Appellant requested any information that might be exculpatory before the trial began. At the hearing on the motion for new trial, there was some dispute as to when the State knew about Ms. Ricker's conversation with her son about the confrontation. We agree with Appellant that the information is favorable. The victim's mother stated that the victim admitted to her that he brandished a weapon during the earlier altercation he had with Appellant. Clearly, this testimony from the victim's mother would have corroborated his version of the events leading up to the shooting.

However, we conclude that the evidence in question does not meet the fourth prerequisite of materiality. As stated above, to be material there must be a reasonable probability that the result of the proceeding would have been different had the evidence been disclosed. *See Bagley*, 473 U.S. at 682. Appellant and his ex-girlfriend testified about their confrontation with the victim. They both stated that he brandished a gun and that was what started the car chase. Appellant's aunt also testified that when Appellant arrived at her house, the victim pulled up in his car and pointed a gun at her. A gun matching the description given by Appellant, his ex-girlfriend, and Appellant's aunt was found in the victim's hotel room. The jury was presented with adequate evidence to show that the victim had a gun during his previous altercation with Appellant.

The fact that the victim had a gun and brandished it during the altercation does not alter that fact that the altercation between Appellant and the victim occurred on June 22, 2005, six days before the shooting on June 28, 2005. Additional testimony about the victim's possession of the gun on June 22, 2005, does not make it more likely that the victim had a gun when he was shot by Appellant. Appellant was convicted of the lesser-included offense of second-degree murder. While we agree that the evidence somewhat corroborates Appellant's version of the events on June 22, 2005, we do not find that the testimony would make him any less culpable for the shooting death of the victim on June 28, 2005. Therefore, we conclude that there is not a reasonable probability that Ms. Ricker's testimony would have resulted in a different outcome at trial. Appellant has not met the fourth prerequisite to prove that his due process rights were violated by the failure to receive this evidence.

Treatment of Marcus Coffey

Appellant argues that the State violated his right to due process by failing to disclose the extent of favorable treatment Mr. Coffey was given in exchange for his testimony at Appellant's trial. On November 22, 2005, Mr. Coffey entered an *Alford* plea[2] to facilitation of second-degree murder. During his guilty plea hearing, it was stated that pursuant to the agreement, Mr. Coffey was not to be sentenced until after Appellant and his co-defendant, Mr. Green, had been tried. The sentence was to be in a range of eight to twelve years with no specific agreement as to length or as to manner of service of sentence. This arrangement was also explained in the same manner at Mr. Green's trial, which was held before Appellant's trial.

---

[2] This type of plea is named after *North Carolina v. Alford*, 400 U.S. 25 (1970), in which the United States Supreme Court discussed the right of an accused to plead guilty in his best interest while professing his actual innocence.

When Mr. Coffey testified at Appellant's trial he had still not been sentenced by the trial court. His testimony about his plea bargain at Appellant's trial set out the same agreement as explained above. According to statements made at the hearing on the motion for new trial, when Mr. Coffey was sentenced after Appellant's trial, he was sentenced to eight years to be served on probation. The State recommended that the sentence be served on probation.

Appellant argues that his due process rights were violated because he was not informed that Mr. Coffey was to serve his sentence on probation. According to the record on appeal, the State did not recommend that the sentence be served on probation until the day of Mr. Coffey's sentencing. The district attorney testified that he had not decided to do so until the date of the sentencing. Mr. Coffey's attorney testified that both he and Mr. Coffey were surprised by the recommendation for probation because the State's attorney had not mentioned probation as a possibility.

We conclude that the record does not demonstrate by a preponderance of the evidence that the State suppressed this information. This does not appear to be a case where there was a secret deal between the State and Mr. Coffey for a recommendation of probation. It appears that the District Attorney decided the morning of the sentencing hearing to recommend probation for Mr. Coffey. For this reason, Appellant has not met his burden to prove that his due process rights were violated.

### Witness Christina Boone

Appellant argues that the trial court erred in allowing the State to cross-examine its own witness, Christina Boone, with regard to her prior out of court statement given to officers and that the trial court erred in determining that Ms. Boone was a hostile witness. The State argues that the trial court acted properly within its discretion with regard to both issues.

Trial courts have broad discretion in determining the admissibility of evidence. *State v. McLeod*, 937 S.W.2d 867, 871 (Tenn. 1996). "It is well-settled that the propriety, scope, manner[,] and control of the examination of witnesses is a matter within the discretion of the trial judge, subject to review for abuse of discretion." *State v. Caughron*, 855 S.W.2d 526, 540 (Tenn. 1993). The trial court's exercise of discretion may not be reversed unless the court "applied an incorrect legal standard, or reached a decision which is against logic or reasoning that caused an injustice to the party complaining." *State v. Shuck*, 953 S.W.2d 662, 669 (Tenn. 1997).

Tennessee Rule of Evidence 607 allows a party to impeach its own witness, and Rule 611(c) allows the use of leading questions on direct examination of a hostile witness. Moreover a party may impeach a hostile witness by asking the witness whether they previously made certain prior inconsistent statements. Tenn. R. Evid. 613(a), Neil P. Cohen et al., Tennessee Law of Evidence § 6.13[2] (4th ed. 2000). At trial there are limits on the State's power to impeach its own witnesses by presenting the witnesses's prior inconsistent statement. *Mays v. State*, 495 S.W.2d 833 (Tenn. Crim. App. 1972). Impeachment cannot be a "mere ruse" to present to the jury prejudicial or improper testimony. *State v. Roy L. Payne*, No. 03C01-9202-CR-00045, 1993 WL 20116, at *2 (Tenn. Crim. App., at Knoxville, Feb. 2, 1993). In *United States v. Webster*, 734 F.2d 1191 (7th Cir. 1984), the court explained:

> [I]t would be an abuse of [Federal Rule of Evidence 607], in a criminal case, for the prosecution to call a witness that it knew would not give it useful evidence, just so it could introduce hearsay evidence against the defendant in the hope that the jury would miss the subtle distinction between impeachment and substantive evidence- or, if it didn't miss it, would ignore it. The purpose would not be to impeach the witness but to put in hearsay as substantive evidence against the defendant, which Rule 607 does not contemplate or authorize.

*Webster*, 734 F.2d at 1192.

When Ms. Boone began her testimony at trial, she invoked her right not to testify to self-incriminating information under the Fifth Amendment to the United States Constitution. The trial court conducted a jury-out hearing to discuss her intent. She stated that she did not believe that her statement was reliable because she had been drinking and taking Valium before giving the police her statement. She told the trial court that she was not asking to plead the Fifth Amendment because she was afraid of incriminating herself, but rather because she did not agree with what she said in her statement to police. The trial court determined that this situation was not actually proper for Fifth Amendment treatment. The judge instructed the witness to respond to the questions with "yes," "no," or "I don't know," if need be, and he told her that she would be able to explain her answers.

During her testimony, the State attempted to ask Ms. Boone about the statement she had given to police near the time of the murder. Appellant objected to the State's question. The trial court sustained the objection and informed the State that Ms. Boone would have to be declared a hostile witness for the State to impeach Ms. Boone with her statement. The trial court told the State it needed to lay the proper groundwork before asking the witness about her statement.

The State continued its examination, and Appellant objected to many of the questions asked, asserting that they were leading questions. The trial court held a jury-out hearing and made the following findings at the conclusion of the hearing:

> The credibility of a witness may be attacked by any party, including the party calling the witness.
>
> . . . .
>
> Now, if the district attorney knows that the witness is going to flat-out say . . .
>
> You know, the extreme example is: I didn't see nothing; I don't know nothing; I gave a statement that's untrue. Then you couldn't declare her to be a hostile witness 'cause you knew before you put her on. But all I . . .
>
> I think what she was telling you, . . . she's basically saying her mind's weak because she was using drugs then.
>
> . . . .
>
> So I think that I'm allowed to declare her to be a hostile witness. . . .
>
> It doesn't seem she is denying [the statement]. It's denying the order of the statement and stuff like that when she met with [the State] some days ago in [Appellant's counsel's] presence. . . .
>
> . . . .
>
> Well, she's awful selective. I think that she's convinced me that she's not a friendly witness.

As stated above, the standard of review for a trial court's decisions with regard to the examination of witnesses is one of abuse of discretion. In the situation at hand, we conclude that there was no abuse of discretion in the trial court's determination that Ms. Boone was a hostile witness or the State's use of leading questions. Clearly, Ms. Boone was reluctant to testify against her relative. While she did not completely disavow her statement, she stated that she questioned its accuracy due to her ingestion of alcohol and drugs. Therefore, the State was entitled to examine Ms. Boone with regard to her statement so that the jury could judge her credibility.

## *Ferguson* **Violation**

Appellant argues that the trial court erred in not dismissing his indictment based upon the State's loss of a towel collected from the victim's hotel room. The State disagrees.

At trial, during Appellant's cross-examination of the officer who searched the victim's hotel room, a photograph of a towel found in the hotel room was entered into evidence. The officer identified the towel and stated that the towel had a drop of blood on it. The officer also explained that the police department had been unable to locate the towel with the other evidence. The officer also testified that the towel was not sent to the TBI lab for analysis to determine whose blood it was.

Subsequently, Appellant filed a motion to dismiss the indictment based upon the lost evidence. The trial court denied the motion because it determined that there was no intent to withhold the towel on the part of the police. The trial court did give an instruction to the jury regarding the missing towel. The officer was later recalled and testified that the more the officers looked at the towel during the investigation, they did not believe the red stain was blood.

The State has a general duty to preserve all evidence subject to discovery and inspection as part of Tennessee Rule of Criminal Procedure 16. The case of *State v. Ferguson*, 2 S.W.3d 912 (Tenn. 1999), illustrates the procedure to examine situations in which the State fails to preserve evidence. In *Ferguson*, the defendant was arrested for DUI. The videotape of various sobriety tests performed by the defendant was inadvertently taped over before his trial. *Ferguson*, 2 S.W.3d at 914. The defendant appealed, arguing that the State violated his Due Process rights by failing to preserve the videotape. In its review of defendant's issue, our state supreme court adopted a test for courts to use in determining whether the loss or destruction of evidence has deprived a defendant of a fair trial. *Id.* at 917. The initial analytical step in this test for determining whether there was any duty to preserve evidence was described as follows:

> Whatever duty the Constitution imposes on the States to preserve evidence, that duty must be limited to evidence that might be expected to play a significant role in the suspect's defense. To meet this standard of constitutional materiality, evidence must both possess an exculpatory value that was apparent before the evidence was destroyed, and be of such a nature that the defendant would be unable to obtain comparable evidence by other reasonably available means.

-13-

*Id.* (quoting *California v. Trombetta*, 467 U.S. 479, 488-89 (1984)). The Court explained that if the proof demonstrates the existence of a duty to preserve the evidence and demonstrates that the State failed in that duty, "the analysis moves to considerations of several factors which guide the decision regarding the consequences of the breach." *Id.* Those factors include: "(1) The degree of negligence involved; (2) The significance of the destroyed evidence, considered in light of the probative value and reliability of secondary or substitute evidence that remains available; and (3) The sufficiency of the other evidence used at trial to support the conviction." *Id.* at 917. "If, after considering all the factors, the trial judge concludes that a trial without the missing evidence would not be fundamentally fair, then the trial court may dismiss the charges." *Id.* However, dismissal is but one of the trial judge's options. *Id.*

Appellant's theory at trial was self-defense. His argument presented the scenario where when Appellant and his co-defendant approached the victim in the parking lot they saw something shiny and believed that the victim was preparing to pull a gun out of his pants. The argument at trial further implied that the victim's girlfriend found the victim's gun when she found him immediately after he had been shot and that she took the gun to their room, cleaned it, and hid it. To support this argument, Appellant points out that the gun was found in the victim's hotel room hidden in a toboggan hat wiped completely clean.

As stated above, the first analytical step when determining if the State had a duty to preserve the towel is whether the evidence in question is constitutionally material. To be constitutionally material, the evidence must possess apparent exculpatory value before it was destroyed and comparable evidence must not be reasonably available. *See Ferguson*, 2 S.W.3d at 917. According to Appellant, the missing towel supports his argument of self-defense because he concludes that the red stain on the towel is a drop of blood from the cleaning of the gun by the victim's girlfriend.

We conclude that the evidence in question does not meet the requirements to be constitutionally material. Although the officers took the care to take a picture of the towel, it was not sent off for testing to see if the red stain was indeed blood, or whose blood it was. We do not believe that Appellant's theory of the use of the towel to clean the victim's gun is a theory that would be readily apparent to officers on the scene. The towel was not soaked in a large amount of blood and was not found near the victim or wrapped around his gun. Assuming the red stain was indeed blood, there are many other more plausible explanations for how a drop of blood would appear on a towel in a hotel room. Also, the towel was never sent for blood analysis by the State and there is no mention in the record of the Appellant planning to have the towel sent for analysis. Therefore, a photograph of the towel, as presented at the trial, is comparable evidence. Also, other evidence was presented in the

form of testimony that the defendants believed that the victim had a gun and a gun was found in the victim's hotel room. The theory was sufficiently presented to the jury.

Even if the towel would be considered constitutionally material, Appellant still would not be successful under the three factors set out in *Ferguson*. While there was clearly negligence involved in the misplacement of the towel, there was no evidence presented to show that it was anything other than ordinary negligence. As stated above, a photograph was presented as evidence at trial. This is clearly reliable substitute evidence. Also, there was other reliable evidence to show that the victim may have had a weapon at the time to support Appellant's theory of self defense. When looking at the evidence as a whole, the towel was not that significant in the case. Finally, the evidence presented was more than sufficient to support Appellant's conviction for the lesser-included offense of second-degree murder.

The trial court properly decided to deny Appellant's motion to dismiss the indictment and instead instruct the jury regarding the missing evidence. Appellant is not entitled to relief on this issue.

### Rule of Exclusion

Appellant argues that the State violated the rule of exclusion by informing rebuttal witness Scott Lowry of the substance of trial testimony. The State argues that the rule of exclusion was not violated.

Rule 615 of the Tennessee Rules of Evidence states, in pertinent part, that "[a]t the request of a party the court shall order witnesses, including rebuttal witnesses, excluded at trial or other adjudicatory hearing." The purpose of the exclusionary rule is to prevent witnesses from changing or altering their testimony based on testimony heard or facts learned from other testifying witnesses. *State v. Harris*, 839 S.W.2d 54, 68 (Tenn. 1992). Trial judges have always been afforded wide discretion in determining whether to impose the sanction of excluding the evidence of the witness suspected of having violated the rule. *State v. Moffett*, 729 S.W.2d 679, 681 (Tenn. Crim. App. 1986); *see also State v. Anthony*, 836 S.W.2d 600, 604-05 (Tenn. Crim. App. 1992).

In the case at hand, the State called Mr. Lowry as a rebuttal witness. Mr. Lowry is the son of the Chief of Police in Johnson City. He stated that he has known Appellant since they were in middle school together. On the day of the murder, Appellant called Mr. Lowry and asked him to come speak with him at Appellant's mother's house. Mr. Lowry stated that the conversation was about the victim and the murder. Mr. Lowry testified that he urged Appellant to go to the police station and turn himself into the police. However, he stated that

Appellant told him that the only thing he wanted to do was see his baby born and then he was going to run. Mr. Lowry said that if Appellant was going to run, then he should run.

On cross-examination, Mr. Lowry stated that he knew about Appellant's case because Mr. Lowry's name had been brought up in Co-defendant Green's trial and the district attorney had told him about it. Appellant's attorney asked Mr. Lowry if the district attorney had told him what had been said about him at trial. Mr. Lowry replied, "Not necessarily. No." When asked, "Did [the district attorney] tell you or did he not sir? This is important." Mr. Lowry replied, "Yes, he did."

After the jury was removed from the courtroom, Appellant's counsel told the trial court that he believed the rule of exclusion had been violated by the State. The trial court held a hearing on the matter. The district attorney told the trial court that he had contacted Mr. Lowry the previous evening as a rebuttal witness after hearing Appellant's testimony. He stated that he had asked, "Did you tell Mr. Austin to leave town or to get out of here or run off when you all had that converstation?," and "Did you go down to his house?" Mr. Lowry replied "Yes. He called me." The district attorney then asked, "Did you tell him to leave town or tell him to run or tell him to get out of town?" Mr. Lowry replied, "No. I did not." The district attorney asked, "Will you come in as a rebuttal witness and testify to that?" Mr. Lowry replied that he would.

After hearing this explanation, the trial court stated that the question was suggestive, but that the attorney would need ask such a question to be able to discover how a potential rebuttal witness would testify. The trial court went on to determine that the rule had not been violated and overruled Appellant's objection.

As stated above, the standard of review is an abuse of discretion. *Moffett*, 729 S.W.2d at 681. We conclude that the trial court did not abuse its discretion in allowing the testimony of Mr. Lowry into evidence. There was no indication or proof given during the jury-out hearing that Mr. Lowry's testimony had in any way been changed or altered based on the questions asked by the district attorney. Therefore, we conclude that Mr. Lowry's testimony was properly allowed into evidence.

### Surrebuttal Witness

Appellant also argues that the trial court erred in denying his request to call a surrebuttal witness, Wendell Lee, who is Appellant's stepfather, to rebut Mr. Lowry's testimony. The State argues that the trial court acted properly within its discretion because Mr. Lee's testimony would not have been proper surrebuttal testimony.

"Following the state's rebuttal, the defendant is entitled to present surrebuttal evidence to explain, contradict, or directly reply to the state's rebuttal evidence." *State v. Thompson*, 43 S.W.3d 516, 524 (Tenn. Crim. App. 2000). The admittance of surrebuttal evidence is in the discretion of the trial court. *Id.* An abuse of discretion must be shown for a reversal of the trial court's decision. *State v. Scott*, 735 S.W.2d 825, 828 (Tenn. Crim. App. 1987).

After Mr. Lowry's testimony, Appellant attempted to present Mr. Lee as a witness. According to Appellant, Mr. Lee was to testify that before Appellant spoke with Mr. Lowry he was going to turn himself into the police, but after Appellant spoke with Mr. Lowry, he decided to run. The trial court ruled that Mr. Lee could not testify as a surrebuttal witness in part because the trial court determined that Mr. Lee would be testifying to Appellant's state of mind.

At the hearing on the motion for new trial, Mr. Lee testified as to what he would have testified at trial. He testified that before Mr. Lowry spoke with Appellant, Appellant was planning on turning himself into the police. After Mr. Lowry spoke with Appellant, Appellant decided to run.

We conclude that there was no abuse of discretion in the trial court's decision to refuse Appellant's request to put this witness on the stand. The proffered testimony does not actually "explain, contradict, or directly reply to" Mr. Lowry's testimony. Mr. Lowry testified that when he first spoke with Appellant he encouraged him to turn himself into the police and by the end of the conversation Appellant was talking about running. Mr. Lee's testimony consists of the identical factual scenario. Therefore, this issue has no merit.

## Jury Instructions

Appellant argues that the trial court erred by instructing the jury over his objection that an inference of guilt may be inferred from the evidence of flight and from the concealment of evidence. The State disagrees.

The trial court gave the jury the following instructions:

> **Flight.** The flight of a person accused of a crime is a circumstance which, when considered with all the facts in the case, may justify an inference of guilt. Flight is the voluntary withdrawal of oneself for the purpose of evading arrest or prosecution for the crime charged.

-17-

Whether the evidence presented proves beyond a reasonable doubt that the Defendant fled is a question for your determination. The fact that flight may have occurred by the Defendant reveals nothing about the accused's state of mind before the crime alleged and therefore does not provide evidence of premeditation.

The law makes no precise distinction as to the manner or method of flight. It may be open, or it may be hurried or a concealed departure, or it may be concealment within the jurisdiction. However, it takes both a leaving the scene of the difficulty and a subsequent hiding out, evasion or concealment in the community, or a leaving of the community for parts unknown to constitute flight.

If flight is proved beyond a reasonable doubt, the fact of flight alone does not allow you to find that the Defendant is guilty of the crime alleged. However, since flight by a Defendant may be caused by a consciousness of guilt, you may consider the fact of flight if flight is so proven, together with – together with all the evidence, when you decide the guilt or innocence of the Defendant.

On the other hand, an entirely innocent person may take flight, and such flight may be explained by the proof offered or by the facts and circumstances of the case. Whether or not there was flight of – by the Defendant, the reasons for it, and the weight to be given to it are questions for the Jury.

. . . .

**Suppression, Concealing, or Destruction of Evidence**. Any attempt by a person to suppress, conceal, or destroy evidence is a circumstance which, when considered with all the facts of the case, may justify an inference of guilt. Whether the evidence presented proves beyond a reasonable doubt the Defendant so acted is a question for your determination.

The fact the suppression, concealment, or destruction of evidence occurred by the Defendant reveals nothing about the accused's state [ ] of mind before the crime alleged, and therefore does not provide evidence of premeditation.

If it is proved beyond a reasonable doubt that evidence was suppressed, destroyed, or concealed alone does not allow you to find the Defendant is

-18-

guilty of the alleged crime. However, since suppression, destruction, or concealment of evidence by a Defendant may be caused by a consciousness of guilt, you may consider the fact of suppression, destruction, or concealment as evidence if proven beyond a reasonable doubt, if suppression, destruction, or concealment of evidence is so proven, together with all the other evidence when you decide the guilt or innocence of the Defendant.

On the other hand, an entirely innocent person may attempt to suppress, destroy, or conceal evidence, and such evidence may be explained by the Defendant, the reasons for it, and the weight to be given to it are questions for you to determine.

. . . .

**Inferences.** The Court has charged the Jury concerning an inference that the Jury may make in regards to certain evidence in the case. However, the Jury is not required to make this inference. It is the exclusive province of the Jury to determine whether the facts and circumstances shown by all the evidence in the case warrant the inference which the law permits the Jury to draw.

The inference may be rebutted by direct or circumstantial evidence or both, whether it exists in the evidence of the State or is offered by the Defendant. Although the Defendant is not required by law to do so, when the Defendant offers an explanation to rebut the inference raised you should consider such explanation, along with all the evidence, in determining not only the correctness of the inference, but also the reasonableness of the Defendant's explanation.

You are not bound to accept either the inference or the Defendant's explanation. The State must prove beyond a reasonable doubt every element of the offense before the Defendant can be found guilty.

"It is well-settled in Tennessee that a defendant has a right to a correct and complete charge of the law so that each issue of fact raised by the evidence will be submitted to the jury on proper instructions." *State v. Farner*, 66 S.W.3d 188, 204 (Tenn. 2001) (citing *State v. Garrison*, 40 S.W.3d 426, 432 (Tenn. 2000); *State v. Teel*, 793 S.W.2d 236, 249 (Tenn. 1990)). Accordingly, trial courts have the duty to give "a complete charge of the law applicable to the facts of the case." *State v. Davenport*, 973 S.W.2d 283, 287 (Tenn. Crim. App. 1998) (citing *State v. Harbison*, 704 S.W.2d 314, 319 (Tenn. 1986)).

Flight

In order for a trial court to charge the jury on flight as an inference of guilt, there must be sufficient evidence to support such instruction. There is sufficient evidence to support a jury charge on flight where there is proof of "'both a leaving the scene of the difficulty and a subsequent hiding out, evasion, or concealment in the community, or leaving the community for parts unknown.'" *State v. Burns*, 979 S.W.2d 279, 289-90 (Tenn. 1998) (quoting *State v. Payton*, 782 S.W.2d 490, 498 (Tenn. Crim. App. 1989)); *see also State v. Franks*, No. W2003-0003-CCA-R3-CD, 2003 WL 22351024, at *3 (Tenn. Crim. App., at Jackson, Oct. 14, 2003), *perm. app. denied*, (Tenn. Jan. 4, 2004). The State can satisfy the subsequent hiding out, evasion, or concealment requirement by introducing evidence from which a jury might infer such action. *State v. Terrance Wilks*, No. W1999-00279-CCA-R3-CD, 1999 WL 1097832, at *4 (Tenn. Crim. App., at Jackson, Nov. 22, 1999) (citing *Payton*, 782 S.W.2d at 490; *Rogers v. State*, 455 S.W.2d 182, 186-87 (Tenn. Crim. App. 1970)). "Any contradictory evidence that serves to rebut the [S]tate's proof merely raises a question for the jury to resolve." *Id.* (citing *Hall v. State*, 584 S.W.2d 819, 821 (Tenn. Crim. App. 1979)). This Court has explained that:

> The law makes no nice or refined distinction as to the manner or method of a
> flight; it may be open, or it may be a hurried or concealed departure, or it may
> be a concealment within the jurisdiction.

*State v. Whittenmeir*, 725 S.W.2d 686, 688 (Tenn. Crim. App. 1986) (quoting *Rogers v.* 455 S.W.2d at 187). It is proper for the trial court to instruct the jury on flight when the issue has been raised by the proof. *State v. Kendricks*, 947 S.W.2d 875, 885-86 (Tenn. Crim. App. 1996) (explaining jury instruction on flight is proper statement of the law).

After a review of the evidence, we determine that there was arguably enough evidence of flight to fairly raise the issue for the jury's determination. After the murder, Appellant and his c-defendant arrived as a gas station in a frantic. After spending the night at his cousin's house, Appellant learned the victim had died and fled to Gatlinburg, where he was subsequently arrested. Regardless, even if it was error for the trial court to give the flight instruction, such error was harmless beyond a reasonable doubt. As noted by our supreme court in *State v. Smith*, 893 S.W.2d 908 (Tenn. 1994):

> Even if an instruction on flight should not have been given, any error is not
> reversible. The Court instructed the jury that whether the Defendant fled was
> a question solely for their decision, that they need not infer flight, and that

-20-

flight alone was insufficient to prove guilt. This, coupled with the overwhelming proof of Defendant's guilt, renders any error as to the flight instruction harmless.

*Id.* at 918.

Like the court in *Smith*, the trial court herein instructed the jury that whether the defendant fled was a question for its determination and that flight alone was not sufficient to find the defendant guilty. The overwhelming proof of Appellant's guilt renders any error in giving the flight instruction harmless. *See State v. Willie Hall*, No. W2008 -01875-CCA-R3-CD, 2010 WL 7, at *9 (Tenn. Crim. App., at Jackson, Feb. 18, 2010), *perm. app. denied*, (Tenn. Sept. 7, 2010)) (determining that even where proof was "tenuous" of defendant's flight, the trial court's decision to give the jury an instruction on flight was harmless in light of the overwhelming evidence of defendant's guilt).

### Concealment or Destruction of Evidence

Appellant also argues that the trial court erred in instructing the jury that they might infer guilt from flight and the concealment of evidence. The State argues that the trial court did not err.

This Court has previously explained that "[a]ny attempt by an accused to conceal or destroy evidence, including an attempt to suppress the testimony of a witness, is relevant as a circumstance from which guilt of the accused may be inferred." *Tillery v. State*, 565 S.W.2d 509, 511 (Tenn. Crim. App. 1978). To this end, our supreme court has agreed that "the concealment of evidence may be relevant to guilt." *State v. West*, 844 S.W.2d 144, 151 (Tenn. 1992). Therefore, "[p]ost-crime concealment of evidence has continued to be an acceptable inference suggesting that a defendant has committed some crime." *State v. Joseph Lee Bernell Bryant*, No. 01C01-9705-CR-00194, 1998 WL 301722, at *6 (Tenn. Crim. App., at Nashville, June 10, 1998), *perm. app. denied*, (Tenn. Jun. 25, 1999).

As stated above, under prior caselaw, instructions regarding the inference of guilt stemming from flight or suppression, destruction, or concealment of evidence can be properly given if the evidence supports the giving of these instructions. Here it is undisputed that there is in fact sufficient evidence to warrant the charge. Appellant plainly states in his brief that he does not dispute that the evidence was sufficient to support the giving of these instructions. Rather, he argues that the giving of these instruction denied him a presumption of innocence and, therefore, denied him his rights to a fair trial and due process. However, that argument it misplaced. The law in our jurisdiction remains that if supported by the evidence, the instruction may be given.

-21-

**Sentencing**

Appellant argues that the trial court erred in imposing a twenty-three-year sentence through the imposition of enhancement factors (1) and (2) and failing to apply mitigating factor (2). The State argues that the trial court did not err and that Appellant is not entitled to relief.

"When reviewing sentencing issues . . . , the appellate court shall conduct a de novo review on the record of the issues. The review shall be conducted with a presumption that the determinations made by the court from which the appeal is taken are correct." T.C.A. § 40-35-401(d). "[T]he presumption of correctness 'is conditioned upon the affirmative showing in the record that the trial court considered the sentencing principles and all relevant facts and circumstances.'" *State v. Carter*, 254 S.W.3d 335, 344-45 (Tenn. 2008) (quoting *State v. Ashby*, 823 S.W.2d 166, 169 (Tenn. 1991)). "If . . . the trial court applies inappropriate mitigating and/or enhancement factors or otherwise fails to follow the Sentencing Act, the presumption of correctness fails." *Id.* at 345 (citing *State v. Shelton*, 854 S.W.2d 116, 123 (Tenn. Crim. App. 1992)). We are to also recognize that the defendant bears "the burden of demonstrating that the sentence is improper." *Ashby*, 823 S.W.2d at 169.

In making its sentencing determination, a trial court, at the conclusion of the sentencing hearing, first determines the range of sentence and then determines the specific sentence and the appropriate combination of sentencing alternatives by considering: (1) the evidence, if any, received at the trial and the sentencing hearing; (2) the presentence report; (3) the principles of sentencing and arguments as to sentencing alternatives; (4) the nature and characteristics of the criminal conduct involved; (5) evidence and information offered by the parties on the enhancement and mitigating factors; (6) any statistical information provided by the administrative office of the courts regarding sentences for similar offenses; (7) any statements the defendant wishes to make in the defendant's behalf about sentencing; and (8) the potential for rehabilitation or treatment. T.C.A. §§ 40-35-210(a), (b), -103(5); *State v. Williams*, 920 S.W.2d 247, 258 (Tenn. Crim. App. 1995). When imposing the sentence within the appropriate sentencing range for the defendant:

> [T]he court shall consider, but is not bound by, the following advisory sentencing guidelines:
>
> > (1) The minimum sentence within the range of punishment is the sentence that should be imposed, because the general assembly set the minimum length of sentence for each felony class to

reflect the relative seriousness of each criminal offense in the
felony classifications; and

(2) The sentence length within the range should be adjusted, as
appropriate, by the presence or absence of mitigating and
enhancement factors set out in §§ 40-35-113 and 40-35-114.

T.C.A. § 40-35-210(c).

At the outset we note that Appellant committed the criminal offenses at issue on June 28, 2005; therefore, the 2005 amendments to the Sentencing Act, which apply to crimes committed after June 7, 2005, are in effect for our review of his sentencing. The 2005 amendments to the Sentencing Act made the application of the enhancement factors advisory in nature. T.C.A. § 40-35-114; *State v. Jackie Lynn Gray*, No. M2007-02360-CCA-R3-CD, 2008 WL 2579175, at *5 (Tenn. Crim. App., at Nashville, June 28, 2008), *perm. app. denied*, (Tenn. Dec. 29, 2008); *State v. Troy Sollis*, No. W2007-00688-CCA-R3-CD, 2008 WL 1931688, at *3 (Tenn. Crim. App., at Jackson, May, 2, 2008). In fact, "[t]he 2005 amendments [to the Sentencing Act] deleted as grounds for appeal a claim that the trial court did not weigh properly the enhancement and mitigating factors." *Carter*, 254 S.W.3d at 344.

After a review of the transcript from the sentencing hearing, it is clear that the trial court considered the nature and characteristics of the criminal conduct involved, Appellant's history and background, the mitigating and enhancement factors, and the principles of sentencing. *See id.* at 345-46. Therefore, there is a presumption that the trial court's determination is correct.

The trial court applied two enhancement factors: (1) that Appellant had "a previous history of criminal convictions or criminal behavior;" and (2) that Appellant "was a leader in the commission of an offense involving two (2) or more criminal actors." *See* T.C.A. § 40-35-114(1), (2). The trial court also applied mitigating factor (13), that the Appellant had a positive work history, but gave this factor little weight. *See* T.C.A. § 40-35-113(13).

According to his pre-sentence report, Appellant has several misdemeanor convictions. These convictions include reckless endangerment, public intoxication, vandalism, assault, weapons offense, and disorderly conduct. The enhancement factor can be properly applied for a history of criminal convictions or behavior. Appellant argues that because his convictions are misdemeanors this factor should not apply. However, the statute does not specify that the convictions be felony convictions. In fact, the statute does not require

convictions but instead criminal convictions or behavior. Therefore, we find no error in the application of this enhancement factor.

With regard to enhancement factor (2) the evidence presented at trial showed that after Appellant had located the victim's car in the Days Inn parking lot he went to the co-defendant's house. While at the co-defendant's house, he called Mr. Coffey, who did not even know the co-defendant, and had him meet them at a church parking lot. Mr. Coffey drove Appellant and the co-defendant to the Days Inn parking lot where Appellant got out of the truck and approached the victim. As the trial court stated, this incident would not have occurred if Appellant had not set the events in motions. Therefore, we conclude that there was no error in the application of this enhancement factor.

Appellant also argues that the trial court erred in not applying mitigating factor (2), that the defendant acted under strong provocation. *See* T.C.A. § 40-35-113(2). The trial court pointed out that the allegedly provoking incident occurred six days before the shooting. We agree with the trial court that an incident which occurred six days before the shooting would not constitute a provoking incident as contemplated by the statute. In addition, immediately before the shooting, Appellant saw the victim's car and went looking for the victim. We fail to see how this would demonstrate the provocation of Appellant.

The record on appeal supports the application of the enhancement and mitigating factors applied by the trial court. Because Appellant cannot appeal the weight given to the factors, we conclude that the presumption of correctness stands and that there is ample support for the imposition of a twenty-three-year sentence.

## Cumulative Error

Appellant also argues that the cumulative effect of the errors by the trial court deprived him of a fair trial. We disagree. Appellant's argument is essentially a recapitulation of the arguments he has presented on appeal. As stated above, we have determined that Appellants above arguments are without merit and, therefore, there were not sufficient errors during at the trial level to deprive Appellant of a fair trial.

## CONCLUSION

For the foregoing reasons, we affirm the judgment of the trial court.

_____
JOHN EVERETT WILLIAMS, JUDGE

-24-